UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:11CV-P437-S

**DAVID ALLEN WARD**                                                       **PLAINTIFF**

v.

**KENTUCKY STATE REFORMATORY** *et al.*                  **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the motion for summary judgment by Defendants CorrectCare-Integrated Health, Inc. (CorrectCare), Frederick W. Kemen, Roy Washington, and Marcia Lynne Shrock (DN 56). Plaintiff filed a response (DN 66) and supplemental response (DN 71); Defendants filed a reply (DN 68) and supplemental reply (DN 72); and the motion is ripe for decision. Upon review, for the reasons set forth below, the Court will grant the motion for summary judgment.

### I.

Plaintiff, David Allen Ward, is a prisoner incarcerated at the Kentucky State Reformatory (KSR). The action arises from Defendants' treatment of Plaintiff for what he describes as severe pain in his back and neck.[1] Following an initial review of the complaint

---

[1] Plaintiff filed a previous lawsuit, Civil Action No. 3:09CV-315-H, concerning an incident where he slipped and fell in the kitchen of KSR. That lawsuit concerned the circumstances surrounding the fall itself and Plaintiff's medical treatment immediately thereafter. The case was dismissed on summary judgment. *See* DNs 153 and 154, *aff'd*, No. 11-5776, slip op. at 5 (6th Cir. Mar. 12, 2012). Apparently recognizing that he cannot relitigate his claims concerning his treatment for the injuries he sustained in the fall, Plaintiff states in his supplemental response to the summary-judgment motion, "But first of all the Plaintiff want to get the Fact Right why he file this suit and that it has not got any thing to do with the other suit he lost . . . . The only Reason why the Plaintiff file this Suit was Because the Plaintiff was and is tire of always Running out of his pain and others Medication."

under 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), the Court allowed Plaintiff's claims to proceed against Defendants Washington and Shrock in their individual capacities for deliberate indifference to his serious medical needs in violation of the Eight Amendment and dismissed Plaintiff's other claims. Plaintiff then filed a motion to reconsider the dismissal of several Defendants and a motion to amend. The Court granted in part and denied in part the motion to reconsider and granted the motion to amend, thereby allowing Plaintiff's deliberate-indifference claims to proceed against Defendant CorrectCare and against Defendants Kemen and Jane and John Doe Pill Call Nurses[2] in their individual capacities.

As stated in the complaint, Plaintiff's deliberate-indifference claim is based upon his allegation that he "keep[s] running out of my pain medicine. I even been denied of my pain medicine because it was a narcotic. Forcing me to be in some really severe pain for days, weeks and even months at times." He stated in the complaint that he went without narcotic pain medication for a total of 63 days. In regards to Defendant CorrectCare, the Court allowed Plaintiff's claim to proceed past initial screening based on his allegation that CorrectCare makes the policy that governs how inmates at KSR are to be treated and the policy that doctors have to follow in treating inmates. He also asserted that CorrectCare sets forth the policy that governs what kind of medicine inmates can and cannot have. As to Defendant Washington, the Court allowed Plaintiff's claim to proceed based on his allegation that "Dr. Washington l[e]ft and he let me run out of the pain medicine more than several times." In regards to Defendant Kemen, the Court allowed Plaintiff's claim to proceed based on his allegation that Kemen "took away" his

---

[2]The claims against Defendants Jane and John Doe Pill Call Nurses were dismissed by Memorandum and Order (DN 87) entered March 20, 2013, for the reasons stated therein.

2

medication. Plaintiff stated that Defendant Kemen "even stop it and took it away from the Plaintiff; Because he did not [want] to give it to the Plaintiff because it was a narcotic." Finally, the Court allowed Plaintiff's claim against Defendant Shrock to proceed based on his allegations that Shrock would not let him have Darvocet and that he was "in some really severe pain for 7 to 8 weeks."

According to Defendants, and undisputed by Plaintiff, the Kentucky Department of Corrections (KDOC) entered into a contract with the University of Kentucky Research Foundation (UK) which requires UK to provide medical and dental services to inmates incarcerated in certain KDOC facilities. UK has a separate agreement with Defendant CorrectCare to assist UK in performing this function. Under this contract, CorrectCare employs medical professionals who provide treatment to inmates at KSR. According to an affidavit by Defendant Kemen, as the Regional Medical Director for the LaGrange Region for Defendant CorrectCare, CorrectCare has no policies limiting a medical provider's discretion to prescribe narcotic versus non-narcotic medications for treatment of pain. Nor does CorrectCare maintain any policies or procedures concerning the process by which pill nurses and administrative staff order or refill prescription medications for inmates.

Furthermore, it is undisputed that narcotic pain medications are considered Schedule III controlled substances under the Controlled Substances Act. *See* 21 U.S.C. § 829(b). This law requires prescriptions and renewals for these prescriptions to be written and signed by a provider with a DEA license. *See id*.

Defendants concede that there were interruptions in Plaintiff's narcotic pain medication supply. They contend that these interruptions were inadvertent and not intentional. Defendants

state that the signed written prescription requirement of the Controlled Substances Act contributed to the interruptions. Defendants submit the affidavit of Defendant Kemen, stating that KSR obtains medications from Diamond Pharmacy Services (Diamond), a large correctional pharmacy provider located in Pennsylvania. Medical providers prescribe medications through an electronic medical records system at KSR. Diamond will not fill, or sometimes refill, a controlled substance without a copy of a written signed prescription. Prescriptions for narcotic medications therefore cannot be submitted electronically and must be printed, signed by the provider, and faxed to Diamond. Diamond typically does not notify KSR when it does not receive a compliant prescription. Instead, Diamond will not ship the medication. The typical way that KSR learns of a problem is by recognizing that a particular medication did not arrive as expected.

According to Defendants' affidavits and Plaintiff's medical records, the following is the course of Plaintiff's treatment as it relates to Defendants. On January 29, 2010, Plaintiff saw Defendant Washington, an Advance Practicing Registered Nurse (APRN) who was acting as Plaintiff's primary care provider. At that time, Plaintiff was taking the following medications for treatment of his pain: Gabapentin (Neurontin), a non-narcotic pain medication; Methocarbonol (Roboxin), a muscle relaxer; Darvocet, a pain medication containing acetaminophen and the narcotic propoxyphen; and Piroxicam, a non-steroid drug used to treat inflammation and pain. Defendant Washington examined Plaintiff concerning his complaints of chronic neck pain and determined that he should continue on the same course of medications for his pain, including the narcotic medication Darvocet. He also ordered a neck wedge be ordered to help alleviate

Plaintiff's neck pain, referred Plaintiff to physical therapy, and directed Plaintiff to return to the clinic on March 12, 2010, for chronic pain management.

On March 10, 2010, Defendant Washington saw Plaintiff for complaints of chronic neck and back pain. The medical records show that, while Plaintiff's Darvocet prescription was set to run out on March 15, 2010, Defendant Washington was informed by Med Central that Plaintiff's prescription for Darvocet had already expired. Washington renewed the prescription. He also directed Plaintiff to return to the clinic in 60 days for pain management.

Defendant Washington again saw Plaintiff on May 5, 2010, for chronic neck and back pain, as well as intermittent abdominal pain, which was unrelated to his neck and back pain. After evaluating Plaintiff, Defendant Washington again renewed his prescription for Darvocet, which included three refills. He also prescribed Carbamezepine (Tergretol), a non-narcotic pain medication, and discontinued Gabapentin (Neurontin). For treatment for pain, Plaintiff was still taking Methocarbamol and a non-steroid anti-inflammatory (Meloxicam), both of which had been prescribed previously by Defendant Washington. The medical records show Defendant Washington directed Plaintiff to return to the clinic in July 2010 for his chronic pain. The medical records for the May 5, 2010, examination do not reflect any complaints by Plaintiff of running out of narcotic pain medication at that time. In June 2010, Defendant Washington was transferred to work at another correctional facility and had no other interaction with Plaintiff after that.

Plaintiff submitted a grievance on June 11, 2010, complaining that he had run out of the Darvocet prescribed by Defendant Washington. In response to the grievance, Defendant Kemen

stated that the federal requirements for prescribing controlled substances may have caused the problem with the refill.

On July 14, 2010, Plaintiff saw Defendant Shrock, also an APRN, for complaints of back and neck pain. Shrock was working on a temporary basis at KSR. Plaintiff requested that his Darvocet prescription be refilled. Defendant Shrock did not refill the prescription for Darvocet. According to Defendant Shrock's affidavit, she knew from her experience that some prisoners feign pain symptoms in order to obtain narcotics. She was not familiar with Ward and was hesitant to prescribe him narcotics. She determined that Plaintiff's pain could be managed with other medications. Defendant Shrock formulated a pain management plan. Plaintiff's medical records show that she directed the following: "Increase tegretol, add naproxen, continue heat & rest; back exercises given to [inmate], need to obtain neck exercises from [physical therapy]."

On September 30, 2010, Plaintiff saw non-Defendant Dr. Rashid Faiyaz. The medical records from that examination state: "[Patient] cam[]e in for [follow up], he is asking to refill[]his darvocet, according to the patient his darvocet r[a]n out 2 months ago and he tried naproxen but did not help. Asking to refill his darvocet." Dr. Faiyaz ordered that Plaintiff's Darvocet prescription be refilled, his Naproxen prescription be discontinued, and his Methocarbamol prescription be continued.

Plaintiff saw Dr. Faiyaz again on December 28, 2010, for neck pain with headache and lower back pain. Darvocet was taken off the market November 2010, and Dr. Faiyaz replaced it with a prescription for Vicodin (a combination of acetaminophen and hydrocodone, a narcotic) on December 28, 2010. The prescription included a supply of refills until January 27, 2011.

Plaintiff submitted a number of grievances concerning his medications. Some of these grievances do not concern any of the Defendants, except to the extent that Defendant Kemen responded to them in his role as Regional Director. Defendants point to a grievance that Plaintiff submitted on February 7, 2011, when he allegedly ran out of Vicodin. In response to the grievance, Defendant Kemen stated as follows:

> A review of your medical record confirms that Vicodin was refilled in a timely manner. However, the prescription was sent electronically to Diamond pharmacy. Vicodin is a scheduled drug under federal law. DEA regulations require that a prescription for a controlled substance bear the prescriber's original signature and DEA registration number.
>
> Federal regulations in matters such as this are very strict, and the pharmacy will not fill a prescription that does not meet all federal requirements. Furthermore, the pharmacy will not necessarily notify us of a non-conforming prescription in a timely manner.
>
> Therefore, I cannot promise that you will not, on occasion, experience gaps in receiving narcotics. I suggest that see your primary care provider and explore options for pain management that do not involve chronic narcotic use.

Around February 11, 2011, Plaintiff filed a grievance stating that he ran out of Naproxen that was prescribed by Dr. Faiyaz. As stated in response to the grievance, "[Inmate] came to [Pill Call] 11 Feb. 11, med was ordered that day by Tera Brittingham LPN. Med was signed off by provider 12 Feb 11 @20:34. Med arrived 14 Feb. 11. Med was picked up by [inmate] 15 Feb 11."

Plaintiff also submitted a grievance he filed on August 23, 2011, concerning treatment by Defendant Kemen, who treated Plaintiff and Dr. Faiyaz's other patients while Faiyaz was on vacation in August 2011. The grievance states that Plaintiff had asked the pill call nurses about his Vicodin prescription running out and was told by the nurse that Defendant Kemen had canceled it. Defendant Kemen states by affidavit that upon a review of Plaintiff's medical

7

records, he concluded that narcotic pain medication was not necessary for Plaintiff and prescribed Genace, a non-narcotic pain medication. Defendant Kemen determined that Genace, along with the other non-narcotic pain medications Plaintiff was taking, were sufficient to control Plaintiff's pain. Defendant Kemen also recognized that Dr. Faiyaz would return from vacation soon, and as Plaintiff's normal physician, could re-evaluate whether to renew the Vicodin prescription. On August 26, 2011, upon his return from vacation, Dr. Faiyaz renewed Plaintiff's Vicodin prescription.

## II.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material when it is capable of affecting the outcome of a suit under governing law, and a dispute about a material fact is "genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the moving party meets its burden, then the non-moving party must cite to particular parts of the record showing a fact that is genuinely disputed; or show that the materials cited by the movant do not establish the absence of a genuine dispute. Fed. R. Civ. P. 56(c)(1)(A) and (B). If the non-moving party fails to show a genuine dispute exists, the court may grant the moving party summary judgment under Fed. R. Civ. P. 56(c)(3). It is insufficient that a non-moving party rest on its pleadings; he must present some "specific facts showing that there was a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. This requires a non-moving party

to "do more than simply show that there is some meta-physical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Ultimately, the Sixth Circuit has stated that the standard for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

### III.

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). To establish an Eighth Amendment violation premised on inadequate medical care, a prisoner must demonstrate that the defendant acted, or failed to act, with "deliberate indifference to serious medical needs." *Farmer v. Brennan*, 511 U.S. at 835 (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834 (6th Cir. 2002). To rise to the level of an Eighth Amendment violation, a prison official must "know of and disregard an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. at 837-38.

Thus, the standard for a claim of deliberate indifference has both a subjective and objective component. *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001). To satisfy the subjective component, the defendant must possess a "sufficiently culpable state of mind," rising above negligence or even gross negligence and being "tantamount to intent to punish." *Broyles v. Corr. Med. Servs.*, 478 F. App'x 971, 975 (6th Cir. 2012) (quoting *Horn by Parks v.*

9

*Madison Cnty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994)). "[T]he subjective intentions of prison authorities must be demonstrated by objective manifestations of such intent, and cannot be proved by factually unsupported, conclusory opinions of the court or of the prisoners or their representatives." *United States v. Michigan*, 940 F.2d 143, 154 n.7 (6th Cir. 1991). In examining deliberate indifference to medical needs, the Sixth Circuit has stated:

> Officials may be shown to be deliberately indifferent to such serious needs without evidence of conscious intent to inflict pain. However, the conduct for which liability attaches must be more culpable than mere negligence; it must demonstrate deliberateness tantamount to intent to punish. Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference.

*Horn by Parks v. Madison Cnty. Fiscal Court*, 22 F.3d at 660 (citations omitted). "'It is obduracy and wantonness, not inadvertence or error in good faith, that characterize'" deliberate indifference. *Wilson v. Seiter*, 501 U.S. 294, 299 (1991) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

The objective component of an Eighth Amendment deliberate-indifference claim requires the existence of a sufficiently serious medical need. *Turner v. City of Taylor*, 412 F.3d 629, 646 (6th Cir. 2005). The objective component is governed by "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* at 9 (citations omitted). Prisoners are not entitled to "unqualified access to health care." *Id.*

Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).

> We distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment. Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.

*Id.* (citations omitted). Mere disagreement over medical treatment cannot give rise to a constitutional claim of deliberate indifference. *Durham v. Nu'Man*, 97 F.3d 862, 869 (6th Cir. 1996).

**A.    Correctcare**

The Sixth Circuit has held that the analysis that applies to a § 1983 claim against a municipality applies to a § 1983 claim against a private corporation like CorrectCare.[3] *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) ("*Monell* involved a municipal corporation, but every circuit to consider the issue has extended the holding to private corporations as well."). "[A] municipality cannot be held liable *solely* because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Id.* Thus, liability of a contracted private entity must be based on a policy or custom of the entity. *Street v. Corr. Corp. of Am.*, 102 F.3d at 818; *see also Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir.

---

[3]"It is clear that a private entity which contracts with the state to perform a traditional state function such as providing medical services to prison inmates may be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey,* 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West v. Atkins*, 487 U.S. 42, 54 (1988)). According to Defendants, CorrectCare contracted with UK to provide medical services to inmates at KSR.

2001) ("CMS's [Correctional Medical Systems, Inc.,] liability must also be premised on some policy that caused a deprivation of [plaintiff's] Eighth Amendment rights.").

To state a claim, a plaintiff must "identify the policy, connect the policy to the [entity] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 363-64 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds by Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability" of the entity under § 1983. *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)).

Defendants argue in their summary-judgment motion that CorrectCare does not have a policy governing how inmates at KSR are to be treated, what kind of medication they can or cannot have, or how the medication is administered. Defendant Kemen stated by affidavit that neither he nor Correctcare "have established any policies limiting a medical provider's discretion to prescribe narcotic versus non-narcotic medications for the treatment of pain. Providers exercise their medical judgment to prescribe the type of medications they feel are medically appropriate." Furthermore, Defendant Kemen stated in his affidavit that CorrectCare "also does not maintain any policies or procedures concerning the process by which pill nurses and administrative staff at prison medical departments, including those personnel at KSR, order or refill prescription medications for inmates."

In response to the motion for summary judgment, Plaintiff produced no evidence to refute Defendant Kemen's testimony or to support the allegation of a CorrectCare policy(ies)

pertaining to prescribing or administering narcotic pain medication. Thus, Plaintiff failed to produce evidence that the gaps in his pain medication occurred as a result of a policy or custom of CorrectCare.

Plaintiff therefore failed to present evidence that would be sufficient to require submission of the issue to the jury, *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990), and there is no genuine issue of material fact as to this issue. Accordingly, CorrectCare is entitled to summary judgment.

**B.     Washington**

Plaintiff alleges that Defendant Washington was deliberately indifferent to his serious medical needs when Washington left KSR and "let me run out of the pain medicine more than several times." Based on Plaintiff's medical records produced in the action, Defendant Washington saw Plaintiff at least three times for treatment for his chronic pain. Each time Defendant Washington saw Plaintiff, he prescribed narcotic pain medication to Plaintiff. In addition to narcotic pain medication, on January 29, 2010, Defendant Washington also prescribed or refilled prescriptions for other medications to treat his pain--a non-narcotic pain medication; a muscle relaxer; and a non-steroid drug used to treat inflammation and pain. Defendant Washington also prescribed Plaintiff physical therapy and a neck wedge to help alleviate his pain. Furthermore, upon each examination of Plaintiff, Defendant Washington directed Plaintiff to return to the clinic for treatment of his chronic pain. Plaintiff's medical records show that when Defendant Washington was informed by Med Central that Plaintiff's prescription for Darvocet was about to run out, he renewed the prescription. The last time

Plaintiff saw Defendant Washington on May 5, 2010, Washington refilled Plaintiff's Darvocet prescription, which included three refills.

Defendants argue that Plaintiff failed to explain or produce evidence that Washington caused the gap in his supply of medications. They contend that Defendant Washington relied on administrative staff and nurses to properly order the refills he had prescribed. Further, they contend that, to the extent Plaintiff would argue that Defendant Washington should have more closely supervised other staff, such claim would fail because a plaintiff cannot state a § 1983 claim based on the doctrine of *respondeat superior*, or the right to control employees.

In this case, Plaintiff does not dispute that he received medical treatment from Defendant Washington for his back and neck pain.[4] Defendant Washington in fact prescribed him narcotic pain medication along with other treatment each time he saw Plaintiff for his chronic pain. While Plaintiff claims that Defendant Washington showed deliberate indifference when he let Plaintiff run out of his pain medication when he was transferred from KSR in June 2010, Plaintiff failed to demonstrate how any action by Defendant Washington caused the alleged gaps in his pain medication supply. *Doe v. Sullivan Cnty.*, 956 F.2d 545, 550 (6th Cir. 1992) (proximate cause is a required element in a § 1983 claim based on a violation of the Eighth Amendment). The medical records show that when Defendant Washington was informed that Plaintiff's Darvocet prescription had expired before the date it was set to run out, he refilled the

---

[4] For purposes of ruling on the instant motion, the Court will assume that Plaintiff has established that his chronic neck and back pain constitute a sufficiently serious medical need to meet the objective component of a deliberate-indifference claim. In response to the summary-judgment motion, Plaintiff points to gaps in other, non-narcotic medications for other ailments for which he was being treated. However, this action concerns Plaintiff's claims of gaps in his narcotic pain medication for chronic neck and back pain as these are the claims that survived initial review under 28 U.S.C. § 1915A.

prescription. The medical records also show that Defendant Washington's last prescription for Darvocet on May 5, 2010, included three refills. The medical records from the May 5, 2010, examination do not reflect any complaints by Plaintiff of running out of pain medication at that time. Plaintiff has simply not presented evidence that Defendant Washington caused him to run out of his pain medication. Moreover, Plaintiff failed to show that Defendant Washington acted with the required "sufficiently culpable state of mind . . . tantamount to intent to punish[,]" *Broyles v. Corr. Med. Servs.*, 478 F. App'x at 975 (citation omitted), such that his claim would rise to the level of deliberate indifference.

Furthermore, Defendant Washington cannot be held liable for the actions of nurses or administrative staff while he was at KSR or after he was transferred to another facility because the doctrine of *respondeat superior*, or the right to control employees, does not apply in § 1983 actions to impute liability onto supervisors. *Monell*, 436 U.S. at 694; *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Rather, to establish supervisory liability in a § 1983 action, "[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy*, 729 F.2d at 421 (citing *Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869, 872-74 (6th Cir. 1982)). Supervisory liability "must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d at 300 (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)). Plaintiff presented no evidence that Defendant Washington should bear liability as a supervisor of other personnel.

Moreover, as to Plaintiff's assertion first made in his response that Defendant Washington's prescribing him Naproxen without reviewing his medical records subjected him to

potential gastrointestinal bleeding, Plaintiff provided no expert or other medical evidence to support this allegation. In fact, nothing in Plaintiff's medical records indicate that he should not be prescribed Naproxen. Moreover, Plaintiff filed a grievance on February 24, 2011, complaining that his Naproxen had run out. He said nothing in that grievance to suggest that he should not be prescribed Naproxen.

As Plaintiff failed to present evidence that Defendant Washington had a "conscious intent to inflict pain" with regard to his treatment of Plaintiff's chronic pain, *Horn by Parks v. Madison Cnty. Fiscal Court*, 22 F.3d at 660, or that any action by Defendant Washington caused the gaps in his medication supply, Plaintiff failed to establish genuine issues of material facts. Therefore, Defendant Washington is entitled to summary judgment.

**C.     Kemen**

Plaintiff states in the complaint that Defendant Kemen took away his narcotic pain medication because Kemen did not want to prescribe him narcotics. In the motion for summary judgment, Defendants do not refute this. They state that Defendant Kemen was required to evaluate whether a Vicodin prescription previously written by Dr. Faiyaz, who was on vacation, should be renewed. Upon reviewing Plaintiff's medical records, Defendant Kemen concluded based upon his medical judgment that narcotic pain medication was not necessary for Plaintiff and prescribed Genace, a non-narcotic pain medication. He determined that Genace, along with the other non-narcotic pain medications Plaintiff was taking, were sufficient to control Plaintiff's pain. This approach was consistent with Defendant Kemen's responses to Plaintiff's grievances concerning running out of his narcotic pain medications wherein Defendant Kemen advised Plaintiff to explore non-narcotic pain management.

Plaintiff argues that Defendant Kemen should have been aware from reviewing his medical records and from handling his grievances that narcotic pain medication was the only pain medication that worked to alleviate Plaintiff's pain and that Kemen showed deliberate indifference in not prescribing him Vicodin while Dr. Faiyaz was on vacation. It is not disputed that Defendant Kemen provided Plaintiff treatment for his back and neck pain. Defendant Kemen chose a different course of treatment than Plaintiff's desired narcotic pain medication.

The Seventh Circuit addressed a similar issue in a recent case, *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063 (7th Cir. 2012). In that case, the plaintiff entered a county jail and informed the medical staff that he took large doses of Oxycontin for chronic pain due to a blood clotting disorder. *Id*. at 1067. The plaintiff argued that the defendant doctor did not believe that narcotic medication was necessary to treat chronic pain, and instead of Oxycontin, the defendant doctor prescribed Ibuprofen and Extra Strength Tylenol for the plaintiff's pain management. *Id*. at 1072-73. The plaintiff claimed that non-narcotic pain medications were not an effective substitute for Oxycontin and that he was in severe pain during his detention. *Id*. at 1073. Affirming summary judgment in favor of the defendants, the Seventh Circuit held that, when an inmate was treated previously with narcotic pain medication, a prison doctor is not required to defer to the doctor who previously treated the inmate. A doctor is "free to make his own, independent medication determination as to the necessity of certain treatments or medications, so long as the determination is based on the physician's professional judgment and does not go against accepted professional standards." *Id*. at 1074.

In the instant case, Defendant Kemen exercised his medical judgment in determining that narcotic pain medication was not necessary to treat Plaintiff's chronic pain, and Plaintiff

presented no evidence to suggest otherwise. Likewise, Plaintiff presented no evidence that Defendant Kemen's determination went against accepted professional standards. Defendant Kemen did not ignore Plaintiff's pain; based on his medical judgment he determined that a combination of non-narcotic medications was sufficient to control Plaintiff's pain. Plaintiff produced no evidence that Defendant Kemen did not in good faith believe that Plaintiff's pain could be treated with non-narcotic medications. *See Wilson v. Seiter*, 501 U.S. at 299 (finding that "'obduracy and wantonness, not inadvertence or error in good faith'" characterize deliberate indifference) (quoting *Whitley v. Albers*, 475 U.S. at 319). While Plaintiff may argue that the medical treatment by Defendant Kemen was inadequate, a dispute over the inadequacy of treatment will not give rise to an Eighth Amendment deliberate-indifference claim, and the Court declines to "second guess" Defendant Kemen's medical judgment. *Westlake v. Lucas*, 537 F.2d at 860 n.5.

Furthermore, in response to the motion for summary judgment, Plaintiff repeatedly argues that Defendant Kemen knew of Plaintiff's problems with his medication based on his handling Plaintiff's grievances and did nothing to help him. As the Court already explained upon the initial review of this matter, a plaintiff cannot maintain a claim against a prison official based merely on his or her denial of the plaintiff's grievance or on the official's failure to act upon information contained in the grievance. *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) ("Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance."); *see also Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003) (same). "The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to

18

liability under § 1983." *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d at 300). "The mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Corr. Med. Servs.*, 73 F. App'x 839, 841 (6th Cir. 2003). A plaintiff's claim is against the subjects of his grievances, not those who merely decided whether to grant or deny the grievances. *See Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006) ("Skinner's complaint regarding Wolfenbarger's denial of Skinner's grievance appeal, it is clear, fails to state a claim."); *Simpson v. Overton*, 79 F. App'x 117, 120 (6th Cir. 2003) ("[T]he denial of an appeal cannot in itself constitute sufficient personal involvement to state a claim for a constitutional violation."); *Martin v. Harvey*, 14 F. App'x 307, 309 (6th Cir. 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care."). On this basis, the Court already dismissed Plaintiff's claims against Defendant Kemen alleging that he failed to act upon information contained in Plaintiff's grievances. Plaintiff cannot revive those claims at this stage.

For the foregoing reasons, Plaintiff failed to produce evidence on an essential element of his claim against Defendant Kemen, and summary judgment therefore will be awarded in Defendant Kemen's favor.

**D.     Shrock**

Plaintiff's claim against Defendant Shrock is similar to that against Defendant Kemen. Plaintiff argues that Defendant Shrock was deliberately indifferent to his serious medical needs when she failed to prescribe him narcotic pain medication, even though, he argues, his medical records evinced his need for them. However, Defendants argue in their summary-judgment motion that the claim against Defendant Shrock fails for the same reason Plaintiff's claim against

Defendant Kemen did.  Defendant Shrock did not ignore Plaintiff's complaints of pain.  Instead of narcotic medication, Defendant Shrock increased Plaintiff's dosage of Tegretol and ordered physical therapy to help alleviate Plaintiff's pain.

In response, Plaintiff presented no evidence that Defendant Shrock did not exercise her medical judgment or that the pain management plan prescribed by Shrock went against accepted professional standards.  *See Holloway v. Delaware Cnty. Sheriff*, 700 F.3d at 1074.  Nor did Plaintiff produce evidence that Defendant Shrock did not believe in good faith that the treatment plan she prescribed could effectively treat Plaintiff's pain.  *See Wilson v. Seiter*, 501 U.S. at 299.  Plaintiff presented no evidence that Defendant Shrock acted with intent to punish him in formulating a pain management plan that did not include narcotic medication.  Plaintiff's claim that Defendant Shrock did not prescribe him the narcotic pain medication he desired is a disagreement in treatment, which does not give rise to a constitutional claim.  *See Westlake v. Lucas*, 537 F.2d at 860 n.5.

For the foregoing reasons, Plaintiff has failed to present evidence on a genuine issue of material fact, and Defendant Shrock is entitled to summary judgment.

## VI.

For the reasons set forth above, **IT IS ORDERED** that Defendants' motion for summary judgment (DN 56) is **GRANTED.**  By separate Order, the Court will direct the Clerk to enter summary judgment in favor of Defendants.

Date:  March 22, 2013

Charles R. Simpson III, Senior Judge
United States District Court

cc:  Plaintiff, *pro se*
     Counsel of record
4411.010